UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-362

| | | |
|---|---|---|
| **BOBBY MOORE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **WAL-MART STORES EAST, LP,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment. Having considered the parties' motions and reviewed the pleadings, the court enters the following Order.

I.      **Background**

Plaintiff worked for defendant beginning in October 2007 as a trailer truck mechanic in defendant's Transportation Office in Shelby, North Carolina. In 2009, plaintiff was promoted to parts clerk. In his new role, plaintiff was responsible for safely and correctly organizing, storing, and managing parts. In doing so, plaintiff was sometimes required to lift and shelve products that could exceed fifty pounds in weight.

In June 2014, plaintiff suffered a stroke and was given a 90-day medical leave of absence. The stroke primarily impacted the left side of his body, including movement in his left arm and leg, facial drooping, slurred speech, and the loss of peripheral vision in his left eye. Plaintiff returned to work on September 2, 2014 after 82 days of medical leave and extensive

physical and occupational therapy. Plaintiff's healthcare provider released him to return to his prior job of parts clerk without restrictions.

At the time of his return, plaintiff continued his rehabilitation and expected to continue improving, and his supervisors indicated they would do their best to accommodate him as long as he could reasonably perform most of his job functions. While plaintiff was still fully capable of performing much of his past work, certain issues arose. Supervisors observed plaintiff leaving tasks undone and not safely and properly stocking and shelving parts; however, they declined to reprimand plaintiff or otherwise discuss these issues with him, in light of his full release from his healthcare provider and belief that plaintiff would continue to improve.

In December 2015, plaintiff attended a meeting with his supervisors and a human resources manager. One of plaintiff's supervisors had noticed plaintiff fall backwards when attempting to enter a forklift, due to plaintiff's inability to properly grasp the forklift with his left hand and balance himself. Other observations similarly suggested that plaintiff's condition had not improved since returning, and reflected a possible impairment that would require accommodation. After plaintiff filed the necessary paperwork requesting an accommodation, defendant denied the request, saying that he was no longer able to perform the essential functions of his position. Instead, defendant offered plaintiff a job transfer. Two weeks later, an opening for the position of Driver Coordinator became available, which plaintiff was qualified to perform within his restrictions. However, plaintiff experienced difficulties adjusting to the new position and carrying out its functions, leading to various errors and ending in his termination in April 2016. As a result of these experiences, plaintiff has filed suit against defendant and claims discrimination under the Americans with Disabilities Act ("ADA").

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it may affect the suit's outcome under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). The burden then shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

The Court views evidence and any inferences from evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The question posed by summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

## III.    Discussion

Plaintiff's claim in this matter under the ADA is twofold: (1) he alleges that he was denied a reasonable accommodation for his disability; and (2) he was wrongfully terminated due to his disability. As to damages, plaintiff argues that an award back pay is warranted; however, since back pay is only awarded if plaintiff is successful, that issue will not be reached for the reasons that follow on the substantive claims.

### a.    Whether plaintiff was denied a reasonable accommodation

First, the Court will consider plaintiff's allegation that he was denied a reasonable accommodation. To support a *prima facie* claim for a failure to accommodate under the ADA, plaintiff must now present evidence that could establish: (1) that he had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). If plaintiff successfully establishes these four elements, defendant may still avoid liability by showing "that the proposed accommodation will cause undue hardship in the particular circumstances." Reyazuddin v. Montgomery Cty., 789 F.3d 407, 414 (4th Cir. 2015) (internal quotation marks omitted).

First, the Court will consider whether plaintiff has a disability within the meaning of the statute. Defendant argues that plaintiff is not disabled, citing that a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). However, in September 2008, Congress

broadened the definition of disability under the ADA in order to make it "easier for people with

disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). The Americans with

Disabilities Act Amendments Act of 2008 ("ADA Amendments Act," "ADAAA," or "Act").

The Act clarifies that the main focus of the ADA "should be whether covered entities have

complied with their obligations and whether discrimination has occurred, not whether the

individual meets the definition of disability." Id. Essentially, the ADAAA now limits questions

of whether an individual's impairment is a disability, as that "should not demand extensive

analysis." Pub.L. No. 110-325, § 2(b)(5) (2008); see also Summers v. Altarum Inst., Corp., 740

F.3d 325, 332 (4th Cir. 2014) ("The stated goal of the ADAAA is to expand the scope of

protection available . . . as broadly as the text permits."). In particular, the Act made changes to

the definition of the term "disability" by rejecting the holdings of several Supreme Court

decisions and portions of the EEOC's ADA regulations. In the end, these changes make it easier

for an individual seeking protection under the ADA to establish that he or she has a disability

within the meaning of the ADA.

The ADAAA does, however, maintain the ADA's three-pronged definition of disability.

"Under the ADA, a disability may take any of the following forms: (1) a physical or mental

impairment that substantially limits one or more major life activities (the actual-disability prong);

(2) a record of such an impairment (the record-of prong); or (3) being regarded as having such an

impairment (the regarded-as prong)." Id. at 328 (internal citations and quotations omitted).

However, the ADAAA significantly changed how to interpret these prongs. For example, the list

of major life activities was enlarged to include "caring for oneself, performing manual tasks,

seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §

12102(2)(A). In addition, "substantially limits" must now be "interpreted consistently with the

findings and purposes of the [ADAAA]." 42 U.S.C. § 12102(1)(A).

Here, plaintiff suffered a stroke, and the resulting symptoms significantly impacted the

left side of his body, including the use of his left arm, loss of peripheral vision in his left eye, and

a need for a leg brace and cane. Defendant does not contest that plaintiff suffers from these

symptoms; however, defendant focuses on the pre-ADAAA analysis of plaintiff's qualifying

status which that Act was developed to end. For the Court, there is no dispute of material fact

that plaintiff is actually disabled within the meaning of the ADA and the ADAAA, as major life

activities of performing manual tasks, seeing, walking, lifting, and working have all been

substantially limited by plaintiff's stroke. Thus, in keeping with the ADAAA's stated goal, the

Court finds that plaintiff is actually disabled within the meaning of the Act due to the

impairments from the stroke he suffered and their well-established presence in the record.

Next, the Court considers whether defendant had notice of plaintiff's disability. Here,

defendant was aware plaintiff had a stroke and of the accompanying limitations, as evidenced by

measures defendant took to ease plaintiff's transition back to work and observations by

plaintiff's supervisors. Thus, there is no question that defendant had notice.

The third step is to determine whether plaintiff could perform the essential functions of

his position with a reasonable accommodation. To overcome a motion for summary judgment,

plaintiff must "present evidence from which a jury may infer that the [proposed] accommodation

is 'reasonable on its face, i.e., ordinarily or in the run of cases.'" Halpern v. Wake Forest

University Health Sciences, 669 F.3d 454, 464 (quoting Barnett, 535 U.S. at 401). This "requires

. . . an inquiry into the essential functions of the relevant position." Stephenson v. Pfizer, Inc., 641 F. App'x 214, 219 (4th Cir. 2016). In the context of the ADA, "[n]ot all job requirements or functions are essential." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015). Instead, essential functions include only those functions "that bear more than a marginal relationship to the job at issue." Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994); see also 29 C.F.R. § 1630.2(n)(1) (where essential functions are defined as "the fundamental job duties of the employment position the individual with a disability holds or desires," excluding "the marginal functions of the position"). A job may be multi-faceted, and even if any employee is assigned only to certain tasks, that "does not necessarily mean that those tasks to which she was not assigned are not essential." Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001); see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175-76 (10th Cir. 1999) (holding that it was proper to consider the essential functions of the position for which plaintiff was hired, as opposed to those of the narrower position to which she was assigned.). At this step, plaintiff "bears the burden of demonstrating that [the complainant] could perform the essential functions of [his] job." Tyndall, 31 F.3d at 213.

The ADA specifically identifies two factors that inform whether a particular function is essential to a position. First, an employer's judgment of essential functions must be considered. 42 U.S.C. § 12111(8). Second, if a written job description was prepared ahead of advertising or interviewing candidates for the job, that description "shall be considered evidence of the essential functions of the job." Id. Regulations also provide guidance, identifying seven factors as evidence of an essential function: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for

the job; (3) amount of time spent on the job performing the function; (4) consequences of not requiring the incumbent to perform the function; (5) terms of a collective bargaining agreement; (6) work experience of past incumbents in the job; and (7) current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3)(i)-(vii). None of these seven factors is dispositive, and not all will necessarily be relevant in a given matter. Jacobs, 780 F.3d at 579; Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997). The list is also not exhaustive. 29 C.F.R. § 1630.2(n)(2)(3) (explaining that proof "is not limited to" evidence identified by the regulatory factors); see Basith v. Cook City, 241 F.3d 919, 928 (7th Cir. 2001) (holding that a job description created *after* hiring may still be used as evidence).

As for whether an accommodation is reasonable, "reasonable accommodation" means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability . . . to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Reallocating or redistributing nonessential or marginal job functions is a reasonable accommodation; reallocating or redistributing essential functions is not. Id.; see also Shin v. Univ. of Maryland Med. Sys. Corp., 369 F. App'x 472, 482 (4th Cir. 2010); Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995). Essentially, the ADA requires a feasible or plausible accommodation, US Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002); it does not require an employer to assign an employee to "permanent light duty." Crabill v. Charlotte Mecklenburg Board of Education, 423 F. App'x 314, 323 (4th Cir. 2011) (quoting Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987)); see also Lamb v. Qualex, 33 Fed. Appx. 49, 59 (4th Cir. 2002); Rehrs v. Iams Co., 486 F.3d 353, 357 (8th Cir. 2007) ("Under the ADA, an accommodation that would

cause other employees to work harder, longer, or be deprived of opportunities is not mandated."). If multiple accommodations are possible, an employer "may reasonably accommodate an employee without providing the exact accommodation that the employee requested." Reyazuddin, 789 F.3d at 415; see also Hankins v. The Gap, Inc., 84 F.3d 797, 800 (6th Cir. 1996) (holding that the employer has "ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide").

Here, plaintiff does not argue that he could still perform the job's essential functions with or without an accommodation, or that he requested various reasonable accommodations and was denied them. Instead, plaintiff points out that, upon returning to his job after sufficiently recovering from his stroke, he performed his job for fifteen months before his supervisors expressed any kind of displeasure with his performance. Plaintiff argues that this demonstrates that defendant had accommodated him and there was no reason they could not continue to do so. Further, plaintiff contends that he never had the opportunity to find potential reasonable accommodations, as defendant failed to engage him in an "interactive process" in order to find an accommodation for him. Taylor v. Phoenixville School District, 184 F.3d 296, 319 (3d Cir. 1998); see also Taylor v. Pathmark, 177 F.3d 180, 194 (3d Cir. 1999).

Here, the Court finds plaintiff has not met his burden to survive summary judgment on this issue, as plaintiff failed to present any evidence that would let a jury find a reasonable or plausible accommodation existed that would allow him to carry out his job's essential functions. Halpern, 669 F.3d at 464. Defendant contends that essential functions of plaintiff's job include

the ability to lift up to 50 pounds and safely climb ladders to reach items on higher shelves, and that plaintiff is incapable of performing that job with or without reasonable accommodation.

The Court agrees. The record includes a job description that lists various responsibilities associated with the position, including that lifting up to 50 pounds is required. Plaintiff's supervisor affirmed that plaintiff's job regularly requires lifting over 20 pounds without assistance and safely climbing using a "three-point contact" protocol. Plaintiff's testimony does nothing to contest this, and indeed acknowledges these functions. The Court thus finds that these are essential functions, as the employer judges them to be so, a job description includes them, and multiple employees agree that they are part and parcel of the position.

As for whether plaintiff could perform these essential functions, plaintiff's healthcare provider stated that, as a result of his stroke, plaintiff could no longer lift more than 20 pounds and that he could not carry out the three-point safety protocol used while on a ladder when safely retrieving items from higher shelves, due to weakness along the left side of his body. Plaintiff's deposition only reinforced this provider opinion, as plaintiff testified to occasions where he relied on others' assistance in lifting heavier objects after his stroke. Plaintiff is thus physically incapable of performing essential functions of his job, and the only accommodations plaintiff even alludes to are that other employees would help him carry them out (such as climbing ladders in his stead or helping him carry objects exceeding 20 pounds in weight). It is well-established that accommodations reallocating essential functions or requiring other employees to carry them out are not *reasonable* accommodations. 29 C.F.R. § 1630.2(o)(1)(ii); Shin, 369 F. App'x at 482; Myers, 50 F.3d at 284; Peters v. City of Mauston, 311 F.3d 835, 845 (7th Cir. 2002) (holding that requiring "another person to perform an essential function" is

"unreasonable"). Defendant is also not required to implement an unsafe accommodation, such as removing the three-point safety protocol. See Gardner v. Morris, 752 F.2d 1271, 1280-84 (8th Cir. 1985) (holding that an accommodation that would endanger the plaintiff was not required under the Rehabilitation Act).

Further, the Court is not persuaded by plaintiff's argument that defendant had accommodated plaintiff for fifteen months, and that they must continue to do so. Uncontested evidence indicates that defendant allowed plaintiff to resume working while only performing certain functions of his job, with the understanding that plaintiff would return to full duty as his condition improved. However, defendant was not required to maintain that diminished level of exertion indefinitely, as the duty to provide an accommodation does not include creating a permanent light-duty position that does not otherwise exist. Lamb, 33 Fed. Appx. at 59; Crabill, 423 F. App'x at 323; see also Winfrey v. City of Chicago, 259 F.3d 610, 616 (7th Cir. 2001) (holding that an employer that "bends over backwards" to accommodate a disabled worker "must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation"). Further, there is no time limit for allowing plaintiff to work at a reduced level as he recovers. Champ v. Baltimore County, 884 F. Supp. 991, 1000 (D. Md. 1995), aff'd, 91 F.3d 129 (4th Cir. 1996) (holding that employer's failure to enforce a time limit for light-duty assignments did not turn them into permanent assignments, despite the fact that the disabled plaintiff remained in the position for approximately *sixteen years*); Jones v. Baltimore County, 2001 U.S. Dist. LEXIS 7064 (D. Md. May 18, 2001) (holding that "the fact that an unacceptable situation has been tolerated does not mean that the accommodation that has been made is reasonable"). Finally, the Court also notes that defendant nevertheless attempted to

accommodate plaintiff with a new position that he could perform with the limitations imposed by his disability, and that plaintiff accepted that position.

In sum, plaintiff has not met his burden of providing evidence that a reasonable accommodation would have allowed him to perform his job's essential functions, and he accepted an alternative accommodation that defendant was not necessarily required to offer. There is no dispute of material fact for a jury to resolve. As a result, summary judgment on this issue will be granted in defendant's favor.

### b. *Whether plaintiff was terminated for his disability*

Next, the court will consider plaintiff's allegation that defendant discriminated against him by terminating him for his disability. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge or employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination may be proven through direct and indirect evidence or through the McDonnell Douglas burden-shifting framework. See Raytheon Co. v. Hernandez, 540 U.S. 44, 49–50 & n. 3 (2003). Plaintiff has chosen to pursue the latter approach.

Under the burden-shifting framework, plaintiff first "has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell Couglas Corp. v. Green, 411 U.S. 792 (1973)). If plaintiff meets this requirement, the burden shifts to defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If defendant is

successful, the burden shifts back to plaintiff "to prove by preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

First, plaintiff must establish a prima facie case that his termination violated the ADA. To do so, plaintiff must prove: "(1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling h[is] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (internal citations and quotations omitted). It has already been established that plaintiff is a qualified individual with a disability within the meaning of the ADA, due to his stroke and its accompanying impairments that substantially limit major life activities. 42 U.S.C. § 12102(2)(A). It is uncontested that plaintiff was discharged. Whether plaintiff was fulfilling defendant's legitimate expectations at the time he was discharged is, however, another matter that was not addressed in the previous analysis.

To show that he was meeting defendant's legitimate expectations, plaintiff must "submit probative proof." Ploplis v. Panos Hotel Grp., 267 F.Supp.2d 487, 493 (M.D.N.C. 2003). Probative proof is evidence that "demonstrate[s] that [plaintiff] was qualified in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." Odom v. Int'l Paper Co., 652 F. Supp. 2d 671, 684 (E.D. Va. 2009) (internal quotations omitted), aff'd sub nom. Odom v. Int'l Paper Co., 381 F. App'x 246 (4th Cir. 2010); see also Bordonaro v. Johnston Cty. Bd. Of Educ., 938 F. Supp. 2d 573, 579 (E.D.N.C. 2013) (holding that plaintiff who met or exceeded expectations on every job

performance review established that she had met her employer's legitimate expectations). It may also be evidence that shows that "the proffered 'expectation' is not, in fact, legitimate at all." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 517 (4th Cir. 2006). Legitimate expectations "cannot be a sham designed to hide the employer's discriminatory purpose." Cartee v. Wilbur Smith Assocs., Inc., 2010 WL 5059643, at *4 (D.S.C. Oct. 6, 2010) (quoting Warch, 435 F.3d at 518).

In determining whether plaintiff was performing his job satisfactorily, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (citing Smith v. Flax, 618 F.2d 1062 (4th Cir. 1980)); see also King v. Rumsfeld, 328 F.3d 145 (4th Cir. 2003) (holding that opinions of plaintiff and coworkers are immaterial in determining whether employer's expectations were met). It is also "not the court's province to determine whether an employer demands too much of its workers." Cartee, 2010 WL 5059643, at *4 (citing Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997)).

Here, plaintiff has not demonstrated that he was doing his job well enough to meet defendant's legitimate expectations. Plaintiff does not contest defendant's evidence of his repeated mistakes as Driver Coordinator, or that defendant showed leniency throughout the process by providing him additional training and counseling, and by counting groups of mistakes together instead of individually in order to give plaintiff even more time to adjust to the position. Indeed, plaintiff admitted in his deposition to the errors and mistakes identified by defendant, and that his termination was the result of poor performance. Plaintiff also does not contest that defendant's expectations for plaintiff as Driver Coordinator were patently legitimate. Furthermore, the undisputed evidence presented shows that defendant has terminated only two

other Driver Coordinators in the past three years, and that one such person terminated was terminated for the same type of errors as plaintiff. Ultimately, plaintiff offers no evidence to create a dispute of material fact, instead choosing to reiterate arguments that defendant's failure to inform him of performance issues during his fifteen months working as a Parts Associate, discussed above, provides an inference of discrimination. These arguments are not, however, relevant to plaintiff's performance as Driver Coordinator and repeated discipline for errors resulting in his termination. The Court incorporates here its preceding analysis of plaintiff's failure to accommodate claim. Ultimately, plaintiff does not create a dispute of material fact on this issue.

The Court also notes that, in his memorandum in opposition to the instant motion, plaintiff attempts to recast his original complaint of wrongful termination in violation of the ADA as a complaint of general disability discrimination concerning his reassignment as Driver Coordinator, again citing to the lack of objection from defendant to plaintiff's performance in the fifteen months after his return from his stroke. It appears that this argument is likely barred on procedural grounds since plaintiff did not reasonably put defendant on notice of this theory in his Complaint and, further, did not exhaust his administrative remedies with the EEOC concerning this particular charge. See Fed. R. Civ. P. Rule 8 (a complaint must put defendant on notice of the claims asserted against defendant); Davis v. North Carolina Dep't of Corrections, 48 F.3d 134, 137 (4th Cir. 1995) (failure to exhaust administrative remedies for discriminatory hiring, promotion, and training claims where EEOC charge alleged only disparate disciplinary treatment); Alphonse v. Northern Telecom, Inc., 776 F. Supp. 1075, 1080 (E.D.N.C. 1991) (failure to rehire claims exceed scope of EEOC charge alleging only discriminatory firing).

However, the Court will assume that plaintiff's Complaint could be amended to include this charge, which plaintiff has also argued using the McDonnell Douglas framework discussed above. Even if plaintiff did establish a prima facie case of discrimination, defendant has clearly satisfied its burden by presenting evidence that plaintiff was reassigned and terminated for nondiscriminatory reasons. To rebut this showing, plaintiff must now come forward with specific evidence that "the employer's proffered explanation is unworthy of credence." Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007) (citing Burdine, 450 U.S. at 256). Alternately, plaintiff could show that "other employees who were similarly situated," who did not suffer from a disability, "were treated more favorably." Laing v. Fed. Express Corp., 703 F.3d 713, 719 (4th Cir. 2013) (citing McDonnell Douglas, 411 U.S. at 804). Plaintiff has done neither. By admitting that he could not lift more than 20 pounds, he has admitted that he could not perform an essential function of the Parts Associate job, which unequivocally justifies the reassignment. Plaintiff also admitted his repeated mistakes in the position of Driver Coordinator, which further supports defendant's proffered explanation. Finally, defendant's records indicate they have terminated two other people from the position of Driver Coordinator over the past three years; neither were disabled or requested an accommodation and one was terminated for similar reasons to plaintiff, further indicating plaintiff's inability to create a dispute of material fact as to whether pretext exists. Id. at 721 (holding that plaintiff's failure to establish pretext was due in part to plaintiff's failure to identify any similarly situated employee who was "given more favorable treatment"). Once again, despite claiming pretext exists, plaintiff's only evidence is that defendant ceased providing plaintiff with lighter duty after fifteen months. As established,

this does not constitute discrimination on the part of defendant. <u>Lamb</u>, 33 Fed. Appx. at 59; <u>Crabill</u>, 423 F. App'x at 323; <u>Champ</u>, 884 F. Supp. at 1000.

While sympathetic to plaintiff's plight, his disability, and his clear desire to work, courts cannot punish defendant for "bend[ing] over backwards" to accommodate plaintiff by deeming defendant "to have conceded the reasonableness of so far-reaching an accommodation." <u>Winfrey</u>, 259 F.3d at 616. If courts allowed such actions to proceed as plaintiff suggests, employers would be discouraged from doing precisely what was done here, which was to temporarily lessen the physical requirements of a job in hopes that the employee's functional capacity would be restored. Such a result would clearly be antithetical to the ADA and the ADAAA. As a result, summary judgment will also be granted for defendant on the issue of disability discrimination.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#18) is **GRANTED** and this action is **DISMISSED** with prejudice.

Signed: January 12, 2018

Max O. Cogburn Jr
United States District Judge